UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GERALD WINEMAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-01436-SGC |
| THE CITY OF JACKSONVILLE, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

This is an employment discrimination case brought by Gerald Wineman against the City of Jacksonville, claiming it discriminated against him based on his age in violation of the Age Discrimination Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* (the "ADEA"). (Doc. 1).[2] Pending before the court is the City's motion for summary judgment. (Docs. 35, 36). Wineman has filed a response to the motion, and the City has filed a reply in support of the motion. (Docs. 39, 42). For the reasons discussed below, the City's motion is due to be denied.

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Doc. 8).
[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system, and appear in the following format: (Doc. __ at __).

I.    **Material Facts**[3]

In September 2018, longtime Jacksonville Police Chief Tommy Thompson announced his retirement. (Doc. 32-1 at 9). The Jacksonville City Council created a selection committee to evaluate candidates for the police chief position. (Doc. 32-2 at ¶ 2). Five members were selected by the Council to make a recommendation as to the best candidate: the Mayor, Professor Rick Davis from Jacksonville State University, Councilman Tony Taylor, Councilman Jimmy Harrell, and City Administrator Albertha Grant. (Doc. 32-2 at ¶ 3).

Before any candidates were considered by the City, the Civil Service Board ("CSB") screened the candidates to ensure they met the basic qualifications for the position. (Doc. 32-2 at ¶¶ 4-5). The qualifications for the police chief position were:

> Graduation from an accredited four-year college or university with a Bachelor's Degree in Criminal Justice, Public or Business Administration, or a closely related field, and ten (10) years experience in law enforcement work to include five (5) years of progressively responsible supervisory experience over law enforcement officers. (Note—qualifying experience beyond the minimum will be allowed to substitute for required education on a year-for-year basis.)

(Doc. 32-5 at 3). A candidate without a college degree would need four additional years of experience, for a total of fourteen years' experience, to be considered qualified. (Doc. 32-3 at 13; Doc. 40-12 at 4).

---

[3] The following facts are undisputed, unless otherwise noted. They are viewed in the light most favorable to the plaintiff, as the non-movant, with the plaintiff given the benefit of all reasonable inferences.

The CSB certified the following candidates as qualified for the police chief position: Bill Wineman (the plaintiff), Allen George, Scott Hodge, Neil Fetner, Falon Hurst, and Marcus Wood. (Doc. 32-17 at 20; Doc. 32-4).

The plaintiff was 62 years old when Chief Thompson retired, and he had been the assistant chief since 2004. (Doc. 32-1 at 4, 8-9). Before the application process, Wineman met individually with each member of the City Council. (*Id.* at 10).

- Councilman Tony Taylor asked the plaintiff's age and when he would be able to retire under the State Retirement System. (Doc. 32-1 at 12). Taylor asked how much younger Wineman was than Thompson, and the plaintiff told him five years younger. (*Id.*). Taylor told Wineman he did not want to hire someone who was going to stay in Jacksonville three years and then leave. (Doc. 32-1 at 12-13). Taylor said, "[W]e don't want an old chief. We want somebody new and progressive." (Doc. 32-1 at 52).

- The plaintiff had several conversations with Councilman Jimmy Harrell. (Doc. 40-30). Harrell asked Wineman how old he was, how much younger than the former chief he was, and about his retirement and noted Wineman was old enough to retire. (Doc. 32-1 at 15).

- Councilman Cody Galloway also asked about Wineman's age and how old he was compared with Thompson and pointed out Wineman could

3

retire immediately and make more money in benefits than he would earn in salary. Galloway and told the plaintiff, "We don't want to hire somebody then them leave three years later." (Doc. 32-1 at 15-16).

- Councilwoman Sandra Sudduth and Councilman Jerry Parris both told Wineman they wanted him to be the next chief of police. (Doc. 32-1 at 17).

While Thompson was still the Police Chief, Taylor, Harrell, and Galloway told Wineman that Thompson was "too old" and "needs to go." (Doc. 32-1 at 53).

Under the Civil Service Board Rules, the City is required to hire internally if there is a qualified applicant. (Doc. 40-3 at 8; Doc. 40-4; Doc. 32-3 at 8-9); Ala. Code Section 45-8A-71.10. Mayor Smith admitted the City knowingly violated the rules by hiring an outside candidate instead of Wineman. (Doc. 32-3 at 9).

Wood, the successful outside candidate, was 32 years old and did not meet the listed qualifications for the position. (Doc. 40-18 at 12; Doc. 40-20; Doc. 40-25). Wood did not have a college degree (and had a GPA of only 1.16) and had only twelve years of law enforcement experience. (Doc. 40-20; Doc. 40-25). Wood agreed that, at most, he would have had twelve years and ten months of law enforcement experience. (Doc. 40-18 at 15). Wood also had fewer than six years of supervisory experience. (Doc. 40-20).

Harrell rated Wood higher in the experience category than Wineman, even

though the plaintiff had been the Assistant Chief for many years. (Doc. 40-21 at 2). Harrell also wrote "longevity?" in the remarks section of his evaluation for the three oldest candidates: Allen George (age 50), Scott Hodge (age 48), and the plaintiff (age 62). (Doc. 40-30 at 3; Doc. 32-10 at 11).

The City maintains Wineman was not chosen because Wood gave a better interview. (Doc. 32-20 at 11; Doc. 32-1 at 25). After Wood was chosen for the police chief position, the Mayor told Wineman

> that [he] was the most knowledgeable, had the most experience, knew the City inside and out, very familiar with the City and everything, but did the worst interview he had ever – him or the selection committee had ever seen and was very disappointed in [him].

(Doc. 32-1 at 25).

## II. Standard of Review

Under Rule 56 of the *Federal Rules of Civil Procedure*, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute as to a material fact. *Celotex Corp.*, 477 U.S. at 323. If the moving party carries its initial burden, the non-movant must

go beyond the pleadings and come forward with evidence showing there is a genuine dispute as to a material fact for trial. *Id*. at 324.

The substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id*. at 248. If the evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Id*. at 249-50 (internal citations omitted). All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"[A]t the summary judgment stage the judge's function is not [her]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer v. Sw. Airlines Co*., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III. Analysis

#### A. Wineman's ADEA Claim

The ADEA prohibits an employer from discriminating against an employee

who is at least forty years old "because of" that person's age. 29 U.S.C. §§ 623(a)(1), 631(a). There are three theories of discrimination under the ADEA: disparate treatment discrimination, pattern-and-practice discrimination, and disparate impact discrimination. *See Smith v. City of Jackson*, 544 U.S. 228, 240 (2005). Here, Wineman asserts a disparate treatment claim. (Doc. 1).

A plaintiff can establish a disparate treatment claim under the ADEA with direct or circumstantial evidence. *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010). Wineman asserts he has presented direct evidence of age discrimination, as well as circumstantial evidence. (Doc. 39 at 24). The City argues the plaintiff has not presented sufficient evidence of either type to withstand summary judgment. (Doc. 36 at 36; Doc. 42 at 1-6).

### 1. Direct Evidence of Discrimination

"Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotation marks and alterations omitted), *abrogated in part on other grounds by Lewis v. Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of age, constitute direct evidence of discrimination." *Van Voorhis v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 512 F.3d 1296, 1300 (11th Cir. 2008) (internal quotation marks and alterations omitted) (holding manager's

statement he "didn't want to hire an old pilot" was direct evidence of age discrimination); *see also Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010) (noting Eleventh Circuit has held documents stating "Fire Early – he is too old" and 'Fire Rollins – she is too old" were direct evidence of age discrimination). Evidence that suggests, but does not prove, a discriminatory motive is circumstantial evidence. *Burrell v. Bd. of Trs. of Georgia Military Coll.*, 125 F.3d 1390, 1393-94 (11th Cir. 1997).

Wineman has presented evidence that, before the application process, when he discussed the police chief job opening with Councilman Jimmy Harrell, Harrell told him "we don't want somebody *older* that's followed Chief Thompson's footsteps." (Doc. 32-1 at 53). Council members Tony Taylor and Cody Galloway also asked the plaintiff's age and made similar comments. Regarding Thompson's retirement, Taylor told Wineman that "we don't want an *old* chief." (Doc. 32-1 at 52). Thus, the plaintiff has presented evidence three of the five decision makers made these types of comments.

These are not stray remarks or comments unrelated to a hiring decision. *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990); *Ritchie v. Indus. Steel, Inc.*, 426 F. App'x 867, 871 (11th Cir. 2011); *see Post v. Great Fla. Bank*, No. 08-20007-CIV, 2008 WL 11331681, at *5 (S.D. Fla. Sept. 19, 2008) (holding comments about the plaintiff being too old were not direct discrimination

because it was not "link[ed] … to the employment action). Rather, these comments were made by City council members (*i.e.*, decisionmakers) in the context of discussing Wineman's upcoming candidacy for the police chief position. (Doc. 32-1 at 52-53).

The City argues this evidence does not constitute direct evidence of discrimination because the statements are "not statements from which the only inference to be drawn is that" the defendant was going to "discriminate against [Wineman] on the basis of his age." (Doc. 42 at 4). Specifically, the City contends a reasonable jury could understand statements like "you are ready to retire," "you came up in the era of … Thompson," and "[w]e want someone new and progressive" to mean the selection committee had concerns that the new police chief remain in the position for a long time or that the committee wanted someone who will not "adopt the ways of the prior chief."

Questions about age and comments about retirement, longevity, "generational change," or years of service do not necessarily rise to the level of direct evidence of age discrimination. Here, an additional inference is required to conclude the City, in fact, discriminated against Wineman with regard to selection of the new police chief. *See Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989) ("[R]emarks merely referring to characteristics associated with increasing age, or facially neutral comments from which a plaintiff has inferred discriminatory intent, are not directly

9

probative of discrimination."); *see King v. CVS Caremark Corp.*, 2 F. Supp. 3d 1252, 1259–60 (N.D. Ala. 2014); *Mereish v. Walker*, 359 F.3d 330, 336–37 (4th Cir. 2004); *Gloetzner v. Lynch*, 225 F. Supp. 3d 1329, 1350–51 (N.D. Fla. 2016); *see also Scheick v. Tecumseh Pub. Sch.*, 766 F.3d 523, 531 (6th Cir. 2014). A jury could reasonably conclude these comments are probative of a discriminatory intent; however, because the comments were not made as part of the decision-making process for the police chief position, an inference or presumption is required to get there. Therefore, this is not a direct evidence case.

## 2. Wineman Has Presented Sufficient Circumstantial Evidence

Even without direct evidence, there is ample circumstantial evidence from which a reasonable jury could conclude the City did not award Wineman the police chief position because of his age. The Eleventh Circuit evaluates ADEA disparate treatment claims based on circumstantial evidence using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332-33 (11th Cir. 2013).[4] Under this framework, a plaintiff establishes a prima facie case of age discrimination by showing (1) he was a member of the protected group of persons between the ages of

---

[4] Because this is also the framework used to evaluate employment discrimination claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, Title VII and ADEA case law is interchangeable. *Vickery v. Medtronic, Inc.*, 997 F. Supp. 2d 1244, 1253 n.5 (S.D. Ala. 2014) (*citing Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)).

forty and seventy, (2) he was subjected to an adverse employment action, (3) his employer treated a substantially younger person otherwise similarly situated to him (a "comparator") more favorably, and (4) he was qualified to do the job at issue. *Kragor v. Takeda Pharm. America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (setting forth elements of prima facie case); *Hawthorne v. Baptist Hosp., Inc.*, 448 F. App'x 965, 968 (11th Cir. 2011) (same); *Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298-99 (11th Cir. 2015) (noting with respect to third element that proper inquiry is whether comparator was substantially younger than the plaintiff, not whether comparator is outside the plaintiff's protected class). The burden then shifts to the defendant to put forth a legitimate, non-discriminatory reason for the adverse employment action and then back to the plaintiff to show the proffered reason is a pretext for discrimination. *Kragor*, 702 F.3d at 1308.

However, use of the *McDonnell Douglas* burden-shifting framework "is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case." *Sims*, 704 F.3d at 1333. "Instead, 'the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id*. (quoting *Smith v. Lockheed Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). "A triable issue of fact exists 'if the record, viewed in the light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer

intentional discrimination by the decisionmaker.'" *Id.* (quoting *Smith*, 644 F.3d at 1328). Whether a plaintiff relies on the *McDonnell Douglas* burden-shifting framework or the presentation of a "convincing mosaic" of circumstantial evidence, the language "because of" in the ADEA means the burden of persuasion always remains with the plaintiff to prove age discrimination was the "but-for" cause of the adverse employment action. *Id.* at 1331-33 (discussing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

Here, there is sufficient circumstantial evidence the City discriminated against Wineman because of his age for this case to go before a jury. For example, when discussing the plaintiff's interest in the position at issue:

- Councilman Taylor asked Wineman's age, how much younger he was than Thompson, and when he would be able to retire under the State Retirement System. (Doc. 32-1 at 12). Taylor told the plaintiff he did not want to hire someone that was going to stay in Jacksonville three years and then leave. (Doc. 32-1 at 12-13). Taylor said, "[W]e don't want an old chief. We want somebody new and progressive." (Doc. 32-1 at 52).

- Councilman Harrell asked Wineman how old he was, how much younger than the former chief he was, and about his retirement and noted the plaintiff was old enough to retire. (Doc. 32-1 at 15).

12

- Councilman Galloway also asked about the plaintiff's age and how old he was compared with Thompson and pointed out Wineman could retire immediately and make more money in benefits than he would earn in salary. Galloway told Wineman, "We don't want to hire somebody then them leave three years later." (Doc. 32-1 at 15-16).

- While Thompson was still the police chief, Taylor, Harrell, and Galloway told Wineman that Thompson was "too old" and he "needs to go." (Doc. 32-1 at 53).

The court easily concludes Wineman has presented sufficient circumstantial evidence of age discrimination to support *a prima facie case* relating to the police chief position.

### 3.   The City's Legitimate, Non-Discriminatory Reasons

The City explains Wineman was considered the leading candidate leading into the interviews, but he bombed his interview. (Doc. 32-1 at 25; Doc. 32-20 at 11).

### 4.   Evidence of Pretext

If an employer "articulates one or more [legitimate, non-discriminatory] reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence . . . sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Chapman v. AI Transport,* 229 F.3d 1012,

13

1024-25 (11th Cir. 2000) (citing *Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997) (citations omitted)). A plaintiff may not recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet the reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *Hammock v. Nexcel Synthetics, Inc.*, 201 F. Supp. 2d 1180, 1187 (N.D. Ala. 2002) (quoting *Chapman*, 229 F.3d at 1029 (citing *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000); *Combs*, 106 F.3d at 1541-43)). "It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not [discriminatory]." *Alexander*, 207 F.3d at 1341; *see also Combs*, 106 F.3d at 1541-43. A plaintiff may establish pretext in at least two ways, by showing: (1) "a discriminatory reason more likely motivated" his termination or (2) "the employer's proffered reason is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

The comments listed above are also relevant to the pretext inquiry. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1362 (11th Cir. 1999) (citing *Jones v. Bessemer Carraway Medical Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir.1998) (holding "language not amounting to direct evidence, but showing some racial animus, may be *significant* evidence of pretext once a plaintiff has set out a

14

prima facie case") (emphasis added)). In addition, Wineman presented unrebutted evidence that (1) under the Civil Service Board Rules, the City is required to hire internally if there is a qualified applicant, which he was (Doc. 40-3 at 8; Doc. 40-4; Doc. 32-3 at 8-9); Ala. Code Section 45-8A-71.10.[5] and (2) Wood, the successful outside candidate, did not meet the listed qualifications for the position because he does not have a college degree (and had a GPA of only 1.16) and had only twelve, rather than fourteen, years of law enforcement experience. (Doc. 40-18 at 12, 15; Doc. 40-20; Doc. 40-25).

The court is also cognizant that the City's articulated reason focuses on one snapshot in time – the interview – when the decision makers had far more experience with Wineman's actual performance during his tenure as the assistant chief. The evidence presented by the plaintiff is at least sufficient to raise a genuine issue of fact with regard to whether the defendant's articulated reason for hiring Wood over Wineman was a pretext for age discrimination.

## IV. Conclusion

Wineman has presented sufficient evidence in support of his age discrimination claim to have it submitted to a jury. Therefore, for all of the foregoing reasons, the City's motion for summary judgment (Doc. 35) is **DENIED**.

---

[5] The City's argument that a failure to follow policy is not enough to show pretext misses the mark because it is not the only evidence of pretext Wineman has presented. (Doc. 42 at 8).

**DONE** this 16th day of September, 2021.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE